UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LAMONT MILLER, #168439,

        Plaintiff,                                        Hon. Robert J. Jonker

v.                                                           Case No. 1:20-cv-108

JOHN DAVIDS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Schafer's Motion for Summary Judgment (ECF No. 16), Defendant Schafer's Motion to Strike Plaintiff's Sur-Reply (ECF No. 26) and Plaintiff's Motion for Leave to File a Sur-Reply (ECF No. 38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion to strike be denied, Plaintiff's motion to file a sur-reply be granted, and Defendant's motion for summary judgment be granted in part and denied in part.

## BACKGROUND

Plaintiff initiated this action against 22 individuals concerning events transpiring over a period of more than thirty years. Specifically, Plaintiff has sued the following individuals: (1) John Davids; (2) John Christiansen; (3) Gregory McQuiggin; (4) Gary Capello; (5) Robert Napel; (6) Michael Curley; (7) Shane Place; (8) Linda Tribley; (9) Kenneth Tribley; (10) James Schiebner; (11) Robert Vashaw; (12) Lynn

-1-

Sandborn; (13) Jeffrey Larson; (14) Daniel Lesatz; (15) Gary Miniard; (16) Steven Niemi; (17) Jeri-Ann Sherry; (18) Bruce Curtis; (19) Steve Rivard; (20) Lloyd Rapelje; (21) Kenneth McKee; and (22) Tracy Schafer.  The following allegations are contained in Plaintiff's complaint.  (ECF No. 1).  Given the nature of Plaintiff's allegations, they will be articulated by count for the sake of clarity.

    A.    Counts I and II

From 1987 through "the present day," Plaintiff has been confined by the Michigan Department of Corrections (MDOC) at either the Ionia Correctional Facility (ICF) or the Baraga Correctional Facility (AMF).  During this time, Plaintiff has been "locked down in long-term segregation."[1]  Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; (2) his Fourteenth Amendment right to due process; and (3) his rights under the Michigan Constitution.  These claims are asserted against every Defendant except Defendant Schafer.

    B.    Count III

While confined at ICF and AMF, Plaintiff participated in "periodic reviews" regarding his placement in segregation.  These reviews, however, were "a sham,

---

[1] In December 1987, Plaintiff murdered a prison guard.  (ECF No. 22, PageID.185-92). Plaintiff thereafter continued to assault prison staff, disobey direct orders, engage in threatening behavior, destroy property, and otherwise demonstrate his inability or unwillingness to comply with prison rules and standards of conduct.  (ECF No. 22, PageID.185-89, 196-98).

perfunctory and meaningless because they did not provide [Plaintiff] with any expectations or standards to be released to general prison population." Plaintiff alleges this circumstance violates: (1) his Fourteenth Amendment right to due process; and (2) his rights under the Michigan Constitution. These claims are asserted against every Defendant except Defendant Schafer.

C.    Count IV

While confined at ICF and AMF, Plaintiff was placed on a "special restraint restriction" requiring that he be secured in handcuffs and leg irons "for all out of cell movement." The use of such restraints produced "permanent scars and marks around [Plaintiff's] ankles and wrists." Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants Davids, Christiansen, McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Schiebner, Vashaw, Sandborn, Larson, Lesatz, Miniard, and Niemi.

D.    Count V

While confined at ICF and AMF, Plaintiff was "exposed to the new round system" pursuant to which prison staff would use a "steel wand" to strike a button on his cell door which "activated a beep sound." This occurred approximately every fifteen minutes causing Plaintiff to experience distraction, frustration, restlessness, provocation, and harassment. Plaintiff alleges this conduct violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan

Constitution. These claims are asserted against Defendants Davids, Christiansen, McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Schiebner, Vashaw, Sandborn, Larson, Lesatz, Miniard, and Niemi.

### E. Count VI

While confined at ICF, Plaintiff was placed on an "unwritten special yard restriction" pursuant to which he was subjected to a strip search before and after participating in yard activities. Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants Davids and Sandborn.

### F. Counts VII and VIII

While confined at ICF, Plaintiff was not provided treatment for his emotional impairments, which resulted in a deterioration of his mental health. Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants Schafer, Davids, and McKee.

### G. Count IX

While confined at ICF, Plaintiff was not permitted to participate in the START program pursuant to which he would have received mental health treatment. Plaintiff alleges this circumstance violates: (1) his Fourteenth Amendment right to due process;

-4-

and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants Davids and McKee.

H.     Count X

While confined at AMF, Plaintiff was required to participate in yard activities in an isolation cage which prevented him from interacting with other inmates. Plaintiff alleges this circumstance violates: (1) his First Amendment right to association; and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, Niemi.

I.     Count XI

While confined at AMF, Plaintiff was placed on a "special razor restriction" pursuant to which he was only permitted to use a razor under observation. As Plaintiff shaved his face and "naked body," prison staff would laugh and make sexual comments. Plaintiff alleges this circumstance violates: (1) his Fourth Amendment right to privacy; and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, Niemi.

J.     Count XII

While confined at AMF, Plaintiff was placed on a "special cell cleaning supply restriction," pursuant to which Plaintiff was not permitted access to a broom, dustpan,

mop, or toilet brush. Instead, Plaintiff was required to clean his cell using only a sponge onto which cleaner was placed by a staff member. As a result, Plaintiff was never able to properly clean his cell forcing him to live in unsanitary conditions. Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution. These claims are asserted against Defendants McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, Niemi.

K.   Counts XIII and XIV

Finally, Plaintiff alleges that the conduct that forms the basis of Counts I-IV and VI-XII violates: (1) his Fourteenth Amendment right to the equal protection of the laws; and (2) his rights under Michigan law.[2] It is less clear against whom these claims are asserted. In his complaint, Plaintiff states that these claims are asserted against "Defendants, and each of them, excluding Defendants mentioned elsewhere . . . ." (ECF No. 1, PageID.20-21). Interpreted straightforwardly, this language arguably excludes all Defendants from the scope of these Counts. Considering that the Court must indulgently interpret pro se pleadings, the Court finds that a more reasonable interpretation of Counts XIII and XIV is that Plaintiff is attempting to add causes of action for denial of equal protection to the claims and allegations articulated in

---

[2] The only apparent distinction between Counts XIII and XIV is the theory on which Plaintiff's equal protection claims are premised.

Counts I-IV and VI-XII. For purposes of assessing the present motion, the Court will assume this latter interpretation.

Defendant Schafer now moves for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff has responded to Defendant's motion, including filing a sur-reply, which Defendant moves to have stricken from the record.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-

moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

### I. Motion to Strike

Plaintiff responded to Defendant's motion for summary judgment, after which Defendant filed a reply brief. Plaintiff, without first obtaining leave, later filed a sur-reply (ECF No. 24-25), which Defendant now moves to strike. Plaintiff has now belatedly moved for leave to file a sur-reply. As Defendant notes, the Local Rules require leave of court to file a sur-reply. *See* W.D. Mich. LCivR 7.2(c). While the Court

would normally be receptive to a motion to strike an improperly filed sur-reply, the Court finds that there exists good cause to grant Plaintiff's untimely motion to file a sur-reply and to accept his sur-reply for filing.

In her motion for summary judgment, Defendant correctly stated that she bears the burden to establish that Plaintiff has failed to properly exhaust his administrative remedies. Defendant argued, however, that she had satisfied her burden. In his opposition, Plaintiff agreed that the burden rested with Defendant, but argued that Defendant had failed to satisfy such. In support of his position, Plaintiff submitted evidence regarding a grievance which Defendant, in her motion for summary judgment, did not address.

In her reply brief, Defendant disputed that Plaintiff's evidence changed the analysis, arguing that "Plaintiff has the burden of proving that a grievance is fully exhausted . . . and [Plaintiff] must attach documentation as proof." (ECF No. 20, PageID.156). Defendant argued that because Plaintiff failed to satisfy his burden, her motion for summary judgment should be granted. As discussed below, and as Defendant recognized in her initial brief, Defendant's statement in her reply brief that the burden in this matter rested with Plaintiff is simply incorrect.

Given Defendant's misstatement of the law in her reply brief regarding the applicable burden of proof, the Court finds that Plaintiff's sur-reply was justified, despite his failure to timely seek leave. Accordingly, the undersigned recommends that Defendant's motion to strike be denied, Plaintiff's motion to file a sur-reply be granted,

and Plaintiff's sur-reply (ECF No. 24-25) be accepted for filing and considered in response to the present motion.

## II.     Motion for Summary Judgment

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Ibid.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'   The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy

Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

As discussed above, Plaintiff alleges that Defendant Schafer denied him appropriate mental health treatment in violation of: (1) his Eighth Amendment right to be free from cruel and unusual punishment; (2) his Fourteenth Amendment right to equal protection of the laws; and (3) his rights under the Michigan Constitution.

In support of her motion, Defendant has identified five grievances concerning Plaintiff's medical care, which Plaintiff pursued through all three steps of the grievance process. (ECF No. 16, PageID.68). A review of these grievances reveals that they do

not exhaust any of Plaintiff's claims against Defendant Schafer. (ECF No. 16, PageID.100-24). Plaintiff does not dispute this assessment, but instead argues that there is a sixth grievance concerning his allegations against Defendant Schafer, which he properly exhausted. Plaintiff has submitted evidence that he submitted grievance ICF-19-09-1561-12b in which he alleged that, on September 16, 2019, Defendant Schafer denied his request for mental health treatment. (ECF No. 17, PageID.147). Both parties agree that this grievance was pursued through Steps I and II. (ECF No. 17, PageID.147-50). The dispute concerns whether Plaintiff pursued this grievance through Step III.

As Defendant correctly argues, the MDOC's Step III Grievance Report fails to indicate that the grievance in question was ever pursued to Step III. (ECF No. 16, PageID.95-99). Plaintiff has submitted an affidavit, however, in which he asserts that he did properly appeal this grievance to Step III, but that it was never received and/or properly processed. (ECF No. 25, PageID.208-10). Interpreting this evidence in a light most favorable to Plaintiff, the Court finds that Defendant has failed to meet her burden to establish that Plaintiff did not properly pursue grievance ICF-19-09-1561-12b. Accordingly, with respect to Plaintiff's claim that Defendant Schafer denied him appropriate mental health treatment, Defendant has satisfied her burden except as to the allegation, articulated in grievance ICF-19-09-1561-12b, that on September 16, 2019, Defendant Schafer denied Plaintiff's request for mental health treatment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Schafer's Motion to Strike Plaintiff's Sur-Reply (ECF No. 26) be denied and Plaintiff's Sur-Reply (ECF No. 24-25) be presently considered. The undersigned further recommends that Defendant Schafer's Motion for Summary Judgment (ECF No. 16) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's claims against Defendant Schafer be dismissed without prejudice except for those claims premised on the allegation that on September 16, 2019, Defendant Schafer denied Plaintiff's request for mental health treatment.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 10, 2020          /s/ Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge