UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LAMONT MILLER, #168439,

                Plaintiff,                             Hon. Robert J. Jonker

v.                                           Case No. 1:20-cv-108

JOHN DAVIDS, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss and for Summary Judgment. (ECF No. 21). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part as detailed herein.

## BACKGROUND

Plaintiff initiated this action against 22 individuals concerning events transpiring over a period of more than thirty years. Specifically, Plaintiff has sued the following individuals: (1) John Davids; (2) John Christiansen; (3) Gregory McQuiggin; (4) Gary Capello; (5) Robert Napel; (6) Michael Curley; (7) Shane Place; (8) Linda Tribley; (9) Kenneth Tribley; (10) James Schiebner; (11) Robert Vashaw; (12) Lynn Sandborn; (13) Jeffrey Larson; (14) Daniel Lesatz; (15) Gary Miniard; (16) Steven Niemi; (17) Jeri-Ann Sherry; (18) Bruce Curtis; (19) Steve Rivard; (20) Llord Rapelje;

(21) Kenneth McKee; and (22) Tracy Schafer.   The following allegations are contained in Plaintiff's complaint.   (ECF No. 1).   Given the nature of Plaintiff's allegations, Plaintiff's allegations will, for the sake of clarity, be articulated by count.

### A.   Counts I and II

From 1987 through "the present day," Plaintiff has been confined by the Michigan Department of Corrections (MDOC) at either the Ionia Correctional Facility (ICF) or the Baraga Correctional Facility (AMF).   During this time, Plaintiff has been "locked down in long-term segregation."[1]   Plaintiff's requests to be placed in general population were denied.   Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; (2) his Fourteenth Amendment right to due process; and (3) his rights under the Michigan Constitution. These claims are asserted against every Defendant except Defendant Schafer.

### B.   Count III

While confined at ICF and AMF, Plaintiff participated in "periodic reviews" regarding his placement in segregation.   These reviews were "a sham, perfunctory and meaningless because they did not provide [Plaintiff] with any expectations or standards to be released to general prison population."   Plaintiff alleges this circumstance

---

[1] In December 1987, Plaintiff murdered a prison guard.   (ECF No. 22, PageID.185-92). Plaintiff thereafter continued to assault prison staff, disobey direct orders, engage in threatening behavior, destroy property, and otherwise demonstrate his inability and/or unwillingness to comply with prison rules and standards of conduct.   (ECF No. 22, PageID.185-89, 196-98).

violates: (1) his Fourteenth Amendment right to due process; and (2) his rights under the Michigan Constitution.   These claims are asserted against every Defendant except Defendant Schafer.

### C.     Count IV

While confined at ICF and AMF, Plaintiff was placed on a "special restraint restriction" requiring that he be secured in handcuffs and leg irons "for all out of cell movement."   The use of such restraints produced "permanent scars and marks around [Plaintiff's] ankles and wrists."   Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution.   These claims are asserted against Defendants Davids, Christiansen, McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Schiebner, Vashaw, Sandborn, Larson, Lesatz, Miniard, and Niemi.

### D.     Count V

While confined at ICF and AMF, Plaintiff was "exposed to the new round system" pursuant to which prison staff would use a "steel wand" to strike a button on his cell door that "activated a beep sound."   This occurred approximately every fifteen minutes causing Plaintiff to experience distraction, frustration, restlessness, provocation, and harassment.   Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution.   These claims are asserted against Defendants Davids,

Christiansen, McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Schiebner, Vashaw, Sandborn, Larson, Lesatz, Miniard, and Niemi.

### E.    Count VI

While confined at ICF, Plaintiff was placed on an "unwritten special yard restriction" pursuant to which he had to be strip searched before and after participating in yard activities.   Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution.   These claims are asserted against Defendants Davids and Sandborn.

### F.    Counts VII and VIII

While confined at ICF, Plaintiff was not provided treatment for his emotional impairments, which resulted in a deterioration of his mental health.   Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution.   These claims are asserted against Defendants Schafer, Davids, and McKee.

### G.    Count IX

While confined at ICF, Plaintiff was not permitted to participate in the START program pursuant to which he would have received mental health treatment.   Plaintiff alleges this circumstance violates: (1) his Fourteenth Amendment right to due process;

and (2) his rights under the Michigan Constitution.    These claims are asserted against Defendants Davids and McKee.

H.    Count X

While confined at AMF, Plaintiff was required to participate in yard activities in an isolation cage which prevented him from interacting with other inmates.    Plaintiff alleges this circumstance violates: (1) his First Amendment right to association; and (2) his rights under the Michigan Constitution.    These claims are asserted against Defendants McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, Niemi.

I.    Count XI

While confined at AMF, Plaintiff was placed on a "special razor restriction" pursuant to which he was only permitted to use a razor under observation.    As Plaintiff shaved his face and "naked body," prison staff, both male and female, would laugh and make sexual comments.    Plaintiff alleges this circumstance violates: (1) his Fourth Amendment right to privacy; and (2) his rights under the Michigan Constitution.    These claims are asserted against Defendants McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, Niemi.

J.     Count XII

While confined at AMF, Plaintiff was placed on a "special cell cleaning supply restriction," pursuant to which Plaintiff was not permitted access to a broom, dustpan, mop, or toilet brush.   Instead, Plaintiff was required to clean his cell using only a sponge onto which cleaner was placed by a staff member.   As a result, Plaintiff's cell was never properly cleaned forcing him to live in unsanitary conditions.   Plaintiff alleges this circumstance violates: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his rights under the Michigan Constitution.   These claims are asserted against Defendants McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, Niemi.

K.     Counts XIII and XIV

Finally, Plaintiff alleges that the conduct which forms the basis of Counts I-IV and VI-XII violates: (1) his Fourteenth Amendment right to the equal protection of the laws; and (2) his rights under Michigan law.[2]   Against whom these claims are asserted is less clear.   In his complaint, Plaintiff states that these claims are asserted against "Defendants, and each of them, excluding Defendants mentioned elsewhere. . ."   (ECF No. 1, PageID.20-21).   Interpreted straightforwardly, this language arguably excludes all Defendants from the scope of these Counts.   Considering that the Court must

---

[2] The only apparent distinction between Counts XIII and XIV is the equal protection theory on which each is premised.

indulgently interpret pro se pleadings, the Court finds that a more reasonable interpretation of Counts XIII and XIV is that Plaintiff is attempting to add causes of action for denial of equal protection to the claims and allegations articulated in Counts I-IV and VI-XII.   For purposes of the present motion, the Court will assume this latter interpretation.

Defendants Davids, Christiansen, McQuiggin, Capello, Napel, Curley, Place, Linda Tribley, Kenneth Tribley, Schiebner, Vashaw, Sandborn, Larson, Lesatz, Miniard, Niemi, Sherry, Curtis, Rivard, Rapelje, and McKee now move to dismiss Plaintiff's claims on the ground that such fail to state a claim on which relief may be granted[3] and/or for summary judgment.   Plaintiff has responded to Defendants' motion.

## LEGAL STANDARDS

A.     Motion to Dismiss

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).   The Court need not accept as true, however, factual allegations which are "clearly irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

---

[3] Because Plaintiff paid the filing fee, the Court did not assess Plaintiff's complaint prior to service to determine whether the allegations therein stated a claim on which relief may be granted.

As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

B.    Summary Judgment

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can

satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have

a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.   In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

### I.    Statute of Limitations

Other than to assert that the actions giving rise to this action occurred "from 1987 to the present," Plaintiff asserts no facts regarding the dates on which the events giving rise to this action took place.   Defendants argue that any claim based on conduct that allegedly occurred more than three years from the date Plaintiff initiated this action must be dismissed as untimely.

When determining the limitations period applicable in a § 1983 action, courts must borrow the statute of limitations that governs personal injury actions in the state in which the § 1983 action was initiated.   *See Owens v. Okure*, 488 U.S. 235, 239-41 (1989); *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009).   Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions." *Okure*, 488 U.S. at 249-50; *Bonner*, 564 F.3d at 430.   Michigan law articulates multiple statutes of limitation applicable to personal injury actions.   *See* Mich. Comp. Laws § 600.5805.   Accordingly, the limitations period applicable in the present action is three years, as articulated in

Mich. Comp. Laws § 600.5805(2).    *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990).[4]

While the Court looks to state law to identify the applicable statute of limitations, federal law must be applied when determining when the relevant limitations period begins to run.    *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).    Under federal law, the statute of limitations begins to run "when plaintiffs knew or should have known of the injury which forms the basis of their claims."    *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001).    A plaintiff has reason to know of his injury when he "should have discovered it through the exercise of reasonable diligence."    *Dotson v. Lane*, 360 Fed. Appx. 617, 619 n.2 (6th Cir., Jan. 5, 2010).

Defendants bear the burden to establish that Plaintiff has failed to timely assert his claims.    *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).    If Defendants satisfy their burden, the burden then shifts to Plaintiff to establish that there exists an applicable exception to the statute of limitations.    *Ibid.*    Because Plaintiff has failed to allege the specific dates on which any of the events giving rise to this action occurred, it is difficult to definitively assess Defendants' argument. Nevertheless, there are certain claims with respect to which Defendants have satisfied their burden.    Again, for clarity, the Court will analyze the statute of limitations question on a count-by-count basis.

---

[4] The *Hardin* and *City of Hamtramck* courts identified the then relevant provision as Mich. Comp. Laws § 600.5805(8).    This particular provision is presently codified at Mich. Comp. Laws § 600.5805(2).

A.    Counts I and II

In Counts I and II, Plaintiff alleges that Defendants denied his requests to be removed from segregation.   The statute of limitations with respect to these claims began to run no later than the date on which Plaintiff's request(s) to be removed from segregation were denied.   Plaintiff alleges that these claims arose while he was housed at both ICF and AMF.

Defendants have submitted evidence that Plaintiff was not incarcerated at AMF after July 27, 2015.   (ECF No. 22, PageID.200).[5]   Plaintiff does not dispute this assertion.   (ECF No. 28, PageID.254-55).   Because the events occurring at AMF predate the present action by more than four years, any claims arising out of events at AMF are untimely.   With respect to claims concerning events at ICF, such claims are untimely if premised on a denial to be removed from segregation that occurred prior to February 3, 2017.[6]

---

[5] It is well understood that only admissible evidence can be considered when resolving a motion for summary judgment.   *See, e.g., Bluegrass Dutch Trust Morehead, LLC v. Rowan County Fiscal Court*, 734 Fed. Appx. 322, 327 (6th Cir., May 10, 2018).   The proffered evidence, however, "need not be in admissible form [merely] its content must be admissible."   *McGuire v. Michigan Department of Community Health*, 526 Fed. Appx. 494, 496 (6th Cir., May 9, 2013).   While Defendants have failed to authenticate the exhibit in question, the Court nevertheless finds it appropriate to presently rely on such for the assertion in question.   First, Plaintiff does not dispute that he was last incarcerated at AMF on July 27, 2015.   Moreover, the fact in question is admissible and Defendant would surely be able to present such in admissible form should this matter proceed to trial.

[6] Plaintiff's complaint was received by the Court on February 6, 2020.   Pursuant to the "mailbox rule," Plaintiff's complaint is considered filed on the date Plaintiff signed it and

### B.    Count III

In Count III, Plaintiff alleges that Defendants conducted "sham" segregation reviews.  The limitations period with respect to these claims began to run upon the conclusion of each segregation review which Plaintiff alleges violates his rights. Plaintiff alleges that these claims arose while he was housed at both ICF and AMF.   For the reasons articulated in the preceding section, Plaintiff's claims concerning events occurring at AMF are untimely.   With respect to claims concerning events at ICF, such claims are untimely if premised on a segregation review that occurred prior to February 3, 2017.

### C.    Count IV

In Count IV, Plaintiff alleges that Defendants placed him in unlawful restraints. The limitations period with respect to these claims began to run each time Plaintiff was placed in the restraints that he alleges violated his rights.   Plaintiff alleges that these claims arose while he was housed at both ICF and AMF.   For the reasons already noted, Plaintiff's claims concerning events occurring at AMF are untimely.   With respect to claims concerning events at ICF, such claims are untimely if premised on events occurring prior to February 3, 2017.

---

presumably provided it to prison officials for mailing.   *See, e.g., Frazier v. Butler*, 2020 WL 1453120 at \*5 (W.D. Mich., Feb. 18, 2020).

D.    Count V

In Count V, Plaintiff alleges that Defendants conducted rounds by striking his cell door causing excessive noise.   The limitations period with respect to these claims began to run each time a Defendant struck Plaintiff's cell door causing an offending sound. Plaintiff alleges that these claims arose while he was housed at both ICF and AMF.   For the reasons already noted, Plaintiff's claims concerning events occurring at AMF are untimely.   With respect to claims concerning events at ICF, such claims are untimely if premised on events occurring prior to February 3, 2017.

E.    Count VI

In Count VI, Plaintiff alleges that Defendants subjected him to unlawful strip searches.   The limitations period with respect to these claims began to run each time Plaintiff was unlawfully strip searched.   Plaintiff alleges that these claims arose while he was housed at ICF.   Such claims are untimely if premised on events occurring prior to February 3, 2017.

F.    Count VIII[7]

In Count VIII, Plaintiff alleges that Defendants Davids and McKee violated his rights by "failing to give him mental health treatment."   Plaintiff alleges that these claims arose while he was housed at ICF.   Plaintiff does not allege that he ever requested mental health treatment from Defendants Davids or McKee.   Thus, the

---

[7] Count VII is asserted against Defendant Schafer only who is not presently moving for relief.

limitations period with respect to these claims began to run when Plaintiff knew or had reason to know that a defendant was subjectively aware that Plaintiff required mental health treatment, yet failed to take reasonable action in response to such knowledge. These claims are untimely if Plaintiff possessed such knowledge prior to February 3, 2017.

G.    Count IX

In Count IX, Plaintiff alleges that Defendants denied his requests to participate in the START program.  The limitations period with respect to these claims began to run each time Plaintiff's request to participate in the START program was denied. Plaintiff alleges that these claims arose while he was housed at ICF.  Such claims are untimely if premised on a denial to participate in the START program which was communicated to Plaintiff prior to February 3, 2017.

H.    Count X

In Count X, Plaintiff alleges that Defendants only allowed him to participate in yard activities while in an isolation cage.  The limitations period with respect to these claims began to run each time Plaintiff was placed in an isolation cage.  Plaintiff alleges these claims arose while he was housed at AMF.  For the reasons already discussed, however, Plaintiff's claims concerning events occurring at AMF are untimely.

I.      Count XI

In Count XI, Plaintiff alleges that Defendants placed him on a "special razor restriction."   The limitations period with respect to these claims began to run each time Plaintiff was compelled to shave in the presence of others and/or denied the opportunity to use a razor without supervision.   Plaintiff alleges these claims arose while he was housed at AMF.   For the reasons already discussed, however, Plaintiff's claims concerning events occurring at AMF are untimely.

J.      Count XII

In Count XII, Plaintiff alleges that Defendants refused to provide him with proper cleaning supplies.   The limitations period with respect to these claims began to run each time Plaintiff was denied proper cleaning products to clean his cell.   Plaintiff alleges these claims arose while he was housed at AMF.   For the reasons already discussed, however, Plaintiff's claims concerning events occurring at AMF are untimely.

K.      Counts XIII and XIV

As discussed above, in Counts XIII and XIV, Plaintiff alleges that the conduct that forms the basis of Counts I-IV and VI-XII violates: (1) his Fourteenth Amendment right to the equal protection of the laws; and (2) his rights under Michigan law. Accordingly, the claims in Counts XIII and XIV are timely only to the extent the associated claims, discussed above, are timely.

L.      The Continuing Violation Doctrine

In response to Defendants' motion, Plaintiff argues that dismissal on statute of limitations grounds is inappropriate because his claims "are a continuing violation from 1987 to the present day, therefore tolling the three-year statute of limitations."   (ECF No. 28, PageID.254).   The Court is not persuaded.

The continuing violations doctrine is a statute of limitations exception that "allows for tolling [of the limitations period] based on continuing unlawful acts."   *Norman v. Granson*, 2020 WL 3240900 at *2 (6th Cir., Mar. 25, 2020).   This exception applies only if the following factors exist: (1) the defendant's actions constituted a pattern of wrongful conduct; (2) the plaintiff continued to suffer injury after the initiation of the pattern of wrongful conduct; and (3) further injury to the plaintiff would have been avoidable if the defendant had ceased his wrongful conduct.   *Ibid.*

Stated differently, this exception applies only where the plaintiff experiences "several incidents that are not themselves actionable," but does not apply where the plaintiff suffers "discrete events that are easily identifiable and separately actionable." *Ibid.*   As already discussed, the claims in Plaintiff's complaint are premised upon discrete actions which are both easily identifiable and separately actionable. Accordingly, the Court rejects Plaintiff's argument that the continuing violations doctrine applies in this matter.

M.    Conclusion

With respect to their statute of limitations defense, Defendants have satisfied their burden in two respects.   First, all of Plaintiff's claims regarding events occurring at AMF are untimely.   Second, with respect to Plaintiff's claims concerning events occurring at ICF, Plaintiff's claims are untimely to the extent articulated above.

## II.    Counts V, XIII, and XIV

Defendants next argue that they are entitled to the dismissal of the claims articulated in Counts V, XIII, and XIV.   The Court agrees.

A.    Count V

In Count V, Plaintiff alleges that he was "exposed to the new round system that required staff to hit the metal button that was on the outside of his cell door one or more times with their steel wand until it produced a small metal to metal click and when activated a beep sound was created."

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The analysis by which a defendant's conduct is evaluated consists of two-steps.   First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.   In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."   *Farmer*, 511 U.S. at 834.   With respect to the objective prong of the analysis, contemporary standards

of decency determine whether conditions of confinement are cruel and unusual.  *See
Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S.
337, 346 (1981)).  Contemporary standards of decency are violated only by "extreme
deprivations" which deprive the prisoner of the "minimal civilized measure of life's
necessities."  *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

If the objective test is met, the Court must then determine whether the defendant
acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  In other
words, was the individual deliberately indifferent to inmate health or safety.  *Id.*  The
Eighth Amendment is not implicated, however, where prison officials simply acted with
negligence.  *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing
*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  In sum, to establish that a defendant
acted with deliberate indifference, Plaintiff must "present evidence from which a trier of
fact could conclude "that the official was subjectively aware of the risk" and
"disregard[ed] that risk by failing to take reasonable measures to abate it."  *Greene v.
Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

The Eighth Amendment does not afford to Plaintiff the right to live in a noise-free
environment.  Instead, the Eighth Amendment is violated only where an inmate is
subjected to "unnecessary [and] excessive noise" which is "so excessive and pervasive as
to pose a serious risk of injury."  *See, e.g., Finley v. Salmi*, 2019 WL 7602174 at *5 (E.D.
Mich., Aug. 29, 2019).  In his complaint, Plaintiff describes the offending sound as a
"small metal to metal click" followed by "a beep sound."

-19-

Plaintiff's allegations are insufficient to state a claim under the Eighth
Amendment.   Plaintiff has likewise failed to present evidence creating a genuine factual
dispute on this question.   Thus, whether analyzed as a failure to state a claim on which
relief may be granted or a failure to present evidence sufficient to obtain relief,
Defendants are entitled to relief as to the claims asserted in Count V of Plaintiff's
complaint.

B.    Counts XIII and XIV

In Counts XIII and XIV, Plaintiff alleges that the conduct that forms the basis of
Counts I-IV and VI-XII violates his Fourteenth Amendment right to the equal protection
of the laws.   Count XIII asserts a traditional equal protection claim whereas Count XIV
asserts a "class of one" claim.   One thing that these theories both have in common is
that Plaintiff must demonstrate that he has been treated differently than similarly
situated persons.   *See, e.g., Tuscola Wind III, L.L.C. v. Almer Charter Township*, 327
F.Supp.3d 1028, 1044 (E.D. Mich. 2018); *Center for Bio-Ethical Reform, Inc. v.
Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

While Plaintiff alleges that he was treated improperly and unlawfully, he does not
allege that he was treated differently than similarly situated persons.   Likewise,
Plaintiff has presented no evidence that, with respect to the allegations in Counts I-IV
and VI-XII, he has been treated differently than similarly situated persons.   Thus,
whether analyzed as a failure to state a claim on which relief may be granted or a failure

to present evidence sufficient to establish entitlement to relief, Defendants are entitled

to relief as to the claims asserted in Counts XIII and XIV of Plaintiff's complaint.

## III.    Lack of Specificity

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."   In his

complaint, Plaintiff has articulated a reasonably "short and plain" statement of the

events giving rise to his various claims.   Plaintiff's allegations, however, even if

accepted as true, fail to establish that he is entitled to relief.

As detailed above, a great many of Plaintiff's claims are definitively time-barred.

With respect to Plaintiff's remaining claims, such are time-barred if premised on events

occurring prior to February 3, 2017.   The Court cannot presently assess, however,

whether any of Plaintiff's remaining claims have been timely asserted because Plaintiff

has failed to include in his complaint any of the dates on which the events giving rise to

such allegedly occurred.   Plaintiff has, therefore, failed to demonstrate that he is

asserting any claim that is not time-barred.   Stated differently, Plaintiff, by failing to

allege the dates on which the events giving rise to any of his claims occurred, has failed

to state a plausible claim for relief.[8]   Accordingly, the undersigned recommends that

_____

[8] The Court is not attempting to shift to Plaintiff the burden of proof regarding the
statute of limitations issue.   As discussed above, Defendants have already met their
burden that Plaintiff's claims which arose before a particular date are untimely.   Here,
the Court simply recognizes that because Plaintiff has failed to allege that his remaining
claims arose subsequent to the date in question, he has failed to state a plausible claim
for relief.

Plaintiff's remaining claims [9] be dismissed for failure to state a claim or, in the alternative, that Plaintiff be ordered to submit an amended complaint articulating the dates on which the events giving rise to Plaintiff's remaining claims occurred.

Defendants also argue that Plaintiff's complaint fails to adequately describe the actions or conduct which allegedly subject them to liability.   The Court is not persuaded by this argument, however.   While Plaintiff has not included detailed descriptions of the events giving rise to his various claims, as discussed in the context of the statute of limitations discussion above, Plaintiff has adequately alleged the conduct which allegedly subjects Defendants to liability.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss and for Summary Judgment (ECF No. 21) be granted in part and denied in part.   Specifically, the undersigned recommends: (1) all claims concerning events at AMF be dismissed as untimely; (2) claims concerning events at ICF be dismissed as untimely where the statute of limitations began to run prior to February 3, 2017; (3) Counts V, XIII, and XIV be dismissed for failure to state a claim and/or because Defendants are entitled to summary judgment; and (4) all other claims concerning events at ICF be dismissed for failure to state a claim or Plaintiff be ordered to submit an

---

[9] In this context, the term "remaining claims" refers to those claims which are not time-barred in light of the discussion above.

amended complaint identifying the dates on which the events giving rise to such claims occurred.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 14, 2020                          /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge