UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LAMONT MILLER, #168439,

    Plaintiff,        Hon. Robert J. Jonker

v.               Case No. 1:20-cv-108

JOHN DAVIDS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motions for Affirmative Relief (ECF No. 83 and 86) and Defendants' Motions for Summary Judgment (ECF No. 97 and 99). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that these motions be resolved as articulated herein and this matter be terminated.

## BACKGROUND

Plaintiff initiated this action against 22 individuals concerning events transpiring over a period of more than thirty years.  Specifically, Plaintiff sued the following individuals: (1) John Davids; (2) John Christiansen; (3) Gregory McQuiggin; (4) Gary Capello; (5) Robert Napel; (6) Michael Curley; (7) Shane Place; (8) Linda Tribley; (9) Kenneth Tribley; (10) James Schiebner; (11) Robert Vashaw; (12) Lynn Sandborn; (13) Jeffrey Larson; (14) Daniel Lesatz; (15) Gary Miniard; (16) Steven Niemi; (17) Jeri-Ann Sherry; (18) Bruce Curtis; (19) Steve Rivard; (20) Lloyd Rapelje;

(21) Kenneth McKee; and (22) Tracy Schafer.   These claims have been exhaustively detailed previously.   (ECF No. 50, 52).

Most of Plaintiff's claims have already been dismissed.   (ECF No. 50, 52, 71). Specifically, regarding Defendant Shafer, Plaintiff's claims were dismissed save his claim that, on September 16, 2019, Shafer denied his request for mental health treatment.   With respect to the claims concerning the other 21 defendants, the Court dismissed the claims in Counts V, VIII, and XIV and dismissed the claims concerning events in which the statute of limitations began to run before February 3, 2017.   As for the claims where the statute of limitations did not begin to run until February 3, 2017, the Court recommended that such be dismissed unless Plaintiff submitted an amended complaint "that ties allegations to specific events at [the Ionia Correctional Facility] to specific dates after February 3, 2017."   Plaintiff opted to submit an amended complaint in which he alleges the following.

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections (MDOC), has been confined in "long-term segregation" for more than thirty years "without any justification."[1]    Plaintiff's requests to be released "to general prison population" have repeatedly been denied.    Plaintiff was informed that because he killed a prison guard he would never be returned to general population.

Since 1989, Plaintiff has been subject to a "special restraint restriction," which requires that he "be placed in handcuffs and leg irons with a drop chain attached to them and secured with a padlock for all out of cell movement."    Being subject to this restriction has caused Plaintiff to suffer "permanent scars and marks around his ankles and wrists."    Plaintiff's requests to have this restriction lifted have all been denied.

Plaintiff's cell is located in Housing Unit 1, which is the "most restricted, loudest and rambunctious unit of them all."    Plaintiff's requests to be moved to a different housing unit were denied.    Plaintiff is also subjected to "an unwritten special yard restriction" that requires that Plaintiff be "strip searched by staff before and after yard." This restriction is "unnecessary [and] without any justification."    Plaintiff's requests to have this restriction removed have likewise been denied.

---

[1] In December 1987, Plaintiff murdered a prison guard.    (ECF No. 22-2, 22-3, PageID.185-92).    Plaintiff thereafter continued to assault prison staff, disobey direct orders, engage in threatening behavior, destroy property, and otherwise demonstrate his inability or unwillingness to comply with prison rules and standards of conduct.    (ECF No. 22-2, 22-4, PageID.185-89, 196-98).

Plaintiff has attempted to participate in the Start Unit Program so that he can "receive mental health treatment." Plaintiff's requests have been denied, however, on the ground that Plaintiff "did not fit the criteria" to participate in the Program.

Plaintiff alleges that Defendants' conduct violates his Eighth Amendment right to be free from cruel and unusual punishment as well as his Fourteenth Amendment right to equal protection of the law. Plaintiff also alleges that Defendants have violated his rights under Michigan law.

Several of the individuals named in Plaintiff's initial complaint, specifically Defendants McQuiggin, Capello, Napel, Place, Linda Tribley, Kenneth Tribley, Larson, Lesatz, and Niemi, were omitted from Plaintiff's Amended Complaint and have, therefore, been dismissed from this action. With respect to Defendant Shafer, Plaintiff did not include any allegations against her in his Amended Complaint, but instead merely asserted that he "incorporates Defendant Shafer and all allegations from the original complaint over to this complaint." (ECF No. 72, PageID.598).

Normally, the Court would not permit a case to proceed on claims articulated in two separate pleadings. It is important for the parties, and the Court, that a plaintiff's claims be articulated in a single pleading to prevent confusion regarding the nature of the claims in dispute. The Court recognizes, however, that its previous instructions to Plaintiff regarding the potential filing of an amended complaint were arguably unclear. The Court, therefore, finds that it is appropriate, in this instance, to deviate from this general rule.

-4-

Count VII in Plaintiff's original complaint, asserted against Defendant Shafer is, therefore, incorporated into Plaintiff's Amended Complaint.  As previously noted, however, Plaintiff's initial complaint did not contain any specific factual allegations. The allegations relative to Defendant Shafer were gleaned from the content of a grievance Plaintiff filed against Shafer.  Thus, regarding Plaintiff's remaining claim against Defendant Shafer, the factual allegations regarding such are limited to the allegations contained in grievance ICF-19-09-1561-12b.   (ECF No. 17,-2 PageID.147).

Defendant Shafer now moves for summary judgment.  Defendants Christiansen, Curley, Curtis, Davids, McKee, Miniard, Rapelje, Rivard, Sandborn, Schiebner, Sherry, and Vashaw (collectively "MDOC Defendants") likewise move for summary judgment.  Plaintiff has responded to these motions.  Plaintiff has also submitted two motions seeking "affirmative relief."

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

## ANALYSIS

### I.      Plaintiff's Motions for Affirmative Relief   (ECF No. 83 and 86)

Plaintiff has filed two motions for "affirmative relief" in response to the answers filed by Defendants in response to Plaintiff's First Amended Complaint. (ECF No. 72, 75-76). The Court will address Plaintiff's two motions separately.

### A.      ECF No. 83

On May 6, 2021, Defendant Shafer filed her answer to Plaintiff's First Amended Complaint. (ECF No. 75). Defendant responded to the allegations in Plaintiff's complaint and asserted a variety of "affirmative defenses." In response to Defendant Shafer's answer, Plaintiff filed a "motion for affirmative relief."

In his motion, Plaintiff asserts that he "does not accept Defendant's answer." Plaintiff then describes why Defendant's affirmative defenses are without merit and should be disregarded.   Plaintiff concludes by requesting that the Court enter judgment against Defendant and award him the relief requested in both his initial and amended complaints.

Plaintiff has failed to identify authority or evidence that authorizes the Court to simply enter judgment in his favor.   The Court notes that Plaintiff is not seeking summary judgment under Federal Rule of Civil Procedure 56.   Plaintiff neither requests summary judgment nor cites to Rule 56.   Nevertheless, even if Plaintiff's motion is interpreted as a motion for summary judgment, the result is the same.   To prevail on summary judgment, Plaintiff must present evidence "sufficient for the court to hold that no reasonable trier of fact could find other than for [Plaintiff]."   *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also*, *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (summary judgment in favor of the party with the burden at trial "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact").   Plaintiff has presented no such evidence.   Accordingly, the undersigned recommends that Plaintiff's motion be denied.

B.    ECF No. 86

On May 10, 2021, Defendants Christiansen, Curley, Curtis, Davids, McKee, Miniard, Rapelje, Rivard, Sandborn, Schiebner, Sherry, and Vashaw answered Plaintiff's First Amended Complaint.   (ECF No. 76).   Defendants responded to the

allegations in Plaintiff's complaint and asserted a variety of "affirmative defenses."   In response, Plaintiff filed a "motion for affirmative relief."

Plaintiff again asserts that he "does not accept Defendant's answer."   Plaintiff then articulates why Defendant's affirmative defenses are without merit and should be disregarded.   Plaintiff concludes by requesting that the Court not dismiss his amended complaint.

To the extent Plaintiff is seeking to preemptively defeat a dispositive motion by Defendants, Plaintiff's motion is improper.   When Plaintiff filed this motion, Defendants had not submitted any dispositive motion or otherwise sought relief as to Plaintiff's claims or their affirmative defenses.   The Court again notes that Plaintiff is not seeking summary judgment under Rule 56.   Nonetheless, even if Plaintiff's motion is interpreted as a motion for summary judgment, the result is the same as Plaintiff has failed to present evidence "sufficient for the court to hold that no reasonable trier of fact could find other than for [Plaintiff]."   *Calderone*, 799 F.2d at 259; *see also, Hunt*, 526 U.S. at 553 (summary judgment in favor of the party with the burden at trial "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact").   Accordingly, the undersigned recommends that Plaintiff's motion be denied.

## II.    Defendant Shafer's Motion for Summary Judgment    (ECF No. 97)

As noted above, Plaintiff alleges that, on September 16, 2019, Defendant Shafer denied his request for mental health treatment.   Specifically, Plaintiff alleges that he "sent a letter" requesting treatment to Defendant, but she "failed to respond."   (ECF No. 17-2, PageID.147).   Plaintiff alleges that Defendant's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."   *Estelle*, 429 U.S. at 104-06.   The analysis by which a defendant's conduct is evaluated consists of two-steps.

First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.   A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).   Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need.   *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).   But, if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."   *Ibid.*; *see also*, *Phillips v. Tangilag*, 14 F.4d. 524, 535 (6th Cir.

2021) ("only grossly or woefully inadequate care – not just care that falls below a professional standard – can be called 'cruel and unusual'").

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294. To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, summary judgment is appropriate. *See, e.g., Tangilag*, 14 F.4d. at 535 (the Eighth Amendment is not "a federal malpractice statute"); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

-11-

Defendant Shafer has submitted evidence that Plaintiff has received mental health treatment from a variety of care providers.    (ECF No. 97-2, PageID.765-82). Shafer has also submitted an affidavit in which she asserts that as a nurse practitioner she does not process requests for treatment submitted by prisoners.    (ECF No. 97-3, PageID.783-84).    Shafer further asserts that she did not receive a request for treatment from Plaintiff in September 2019, and, moreover, had no involvement with Plaintiff's care during the entire month of September 2019.    (*Id.*, PageID.784).    During his deposition, Plaintiff asserted that he did, in fact, submit a request for treatment on September 16, 2019.    (ECF No. 97-4, PageID.786-87).    Plaintiff conceded, however, that there existed no evidence that he submitted any such request or that if he did submit such a request that it was received or reviewed by Defendant Shafer.    (*Id.*).

In response to the evidence submitted by Defendant Shafer, Plaintiff has submitted an affidavit in which he asserts that on September 16, 2019, he completed a health care request form and submitted it by "sticking it through the side of [his cell] door."    (ECF No. 104, PageID.1115-16).    Plaintiff asserts that an unknown person collected his request.    (*Id.*, PageID.1116).    Plaintiff further asserts that Defendant Shafer later denied his request for treatment.    (*Id.*).

Plaintiff's submission, along with his deposition testimony, is sufficient to create a factual dispute on the question whether Plaintiff submitted a request for treatment on September 16, 2019.    Plaintiff, however, has presented no evidence that Shafer ever received or had knowledge of Plaintiff's alleged treatment request.    Plaintiff, likewise,

has no evidence that Shafer denied his alleged request for treatment.    Plaintiff's conclusory assertion that Shafer denied his request is not supported by any other evidence or information of which Plaintiff has first-hand knowledge.    It is nothing more than speculation which is insufficient to defeat Defendant's properly supported motion for summary judgment.    Accordingly, the undersigned recommends that Defendant Shafer's motion for summary judgment, (ECF No. 97), be granted and Plaintiff's remaining claim against her be dismissed.

## III.    **MDOC Defendants' Motion for Summary Judgment**    (ECF No. 99)

In his amended complaint, Plaintiff asserts that the conditions under which he is confined violate: (1) his Eighth Amendment right to be free from cruel and unusual punishment; (2) his Fourteenth Amendment right to due process; and (3) his rights under Michigan law.

### A.    Eighth Amendment

Plaintiff alleges that the following circumstances violate his Eighth Amendment rights: (1) continued placement in segregation; (2) being secured in handcuffs and leg irons whenever he exits his cell; (3) being placed in Housing Unit 1; (4) being subject to strip searches when entering and exiting the exercise yard; and (5) being denied participation in the Start Unit Program.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.   In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."   *Farmer*, 511 U.S. at 834.   With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual.   *See Hadix*, 367 F.3d at 525.   Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities."   *Ibid*.

If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind."   *Farmer*, 511 U.S. at 834.   In other words, was the individual deliberately indifferent to inmate health or safety.   *Ibid*. The Eighth Amendment is not implicated, however, where prison officials simply acted with negligence.   *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).   In sum, to establish that a defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed]

-14-

that risk by failing to take reasonable measures to abate it.'"   *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

    1.    Plaintiff's Propensity for Violence and Refusal to Comply

As Defendants detail, Plaintiff has a long history of violence and disregard of prison rules.   Plaintiff was incarcerated in 1982.   (ECF No. 100-3, 100-4, PageID.832-51).   In 1985, Plaintiff assaulted a prison guard.   In 1986, Plaintiff stabbed an inmate and two prison guards.   In 1987, Plaintiff murdered a prison guard.   In 1988, Plaintiff assaulted a prison guard.   (*Id.*).   Moreover, during his incarceration with the MDOC, Plaintiff has been convicted of more than 100 misconduct violations, including convictions for possession of weapons, threatening behavior, and assault.   (ECF No. 100-7, 100-8, PageID.859-932).

It is also important to note that Plaintiff's propensity for violence and his disregard of prison rules is not a circumstance from years ago, which Plaintiff eventually discontinued.   Rather, Plaintiff's dangerous and disrespectful conduct has continued through the present day.   For example, Plaintiff has recently been convicted of numerous misconducts, including threatening behavior, substance abuse, possession of a weapon, and assault on prison staff.   (ECF No. 100-7, 100-8, PageID.859-62, 911-32).

Furthermore, as Defendants note, Plaintiff has repeatedly threatened to commit violence and/or murder against prison staff if afforded the opportunity.   For example, Plaintiff has on various occasions stated the following to prison officials: (1) "if you give me the opportunity, I will fuck you up and I mean fuck you up good"; (2) "I'm gonna kill

you whether I'm on detention or AdSeg"; (3) "I've been dreaming of gutting your ass.    I'm gonna stick you when I hit the yard, bitch"; (4) "Bitch, roll this cell door and I'll fuck you up just like any other punk ass CO"; (5) "Bitch, if I get the chance I'll kill you"; (6) "I'm gonna get your ass or one of your honky friends.    You're gonna bleed out"; (7) "you're a dead fucker, first chance I get, you'll be in the hospital"; (8) "enjoy your last few breaths, I'll be taking them from you"; (9) "you and your honky ass friends are gonna bleed real soon"; (10) "I've been dreaming of gutting your ass"; (11) "I'm gonna stick you in the back bitch, I've done it before and you're next"; (12) "if I can't stab your pink ass, I'm gonna find somebody who can"; (13) "Bitch, your cracker ass is gonna get stuck first chance I get.    I'll hit population soon"; (14) "what are you gonna do when they let me out of here, you think you're so tough, I'll show you how tough you are.    I'm not threatening you, I'm promising you, just say when and I will show you what I can do"; and (15) "next chance I get, I'm gonna kill your ass."    (ECF No. 100-8, PagheID.864-932).

Plaintiff has also been found guilty of the following: (1) planning to "take over" the housing unit during which time "staff would be assaulted [and] stabbed if needed to take them hostage"; (2) possession of contraband, specifically a "toothbrush, fashioned into a cuff key"; (3) soliciting the assault of another prisoner; (4) possession of a piece of metal that had been fashioned into a weapon; (5) a "seven inch long sharpened piece of flat steel."    (ECF No. 100-8, PageID.864-932).[2]

---

[2] Plaintiff disputes committing many of these offenses.    But, other than simply asserting that he did not commit the offense in question, Plaintiff offers no evidence in support of his position.

2.    Continued Placement is Segregation

Plaintiff argues that his continued placement in segregation violates his Eighth Amendment rights.    To the contrary, it would be wildly irresponsible, and likely violate the rights of others, to ever place Plaintiff in the general prison population or to otherwise lessen the restrictions under which he is incarcerated.    Given Plaintiff's willingness to violate prison rules and commit violence and murder, the conditions under which Plaintiff is incarcerated do not violate the Eighth Amendment.

Plaintiff's cell has a window that allows in natural light.    (ECF No. 100-9, PageID.936).    Plaintiff is allowed to shower regularly and his cell has a toilet, stool, desk, and bed.    (*Id.*).    Plaintiff is allowed at least one phone call weekly and one "visit by video" monthly.    (*Id.*).    Plaintiff is not isolated as prison officials regularly walk through the housing units to check on and communicate with prisoners.    (*Id.*, PageID.936-37).    Plaintiff is provided paper and writing utensils as well as a television. (*Id.*, PageID.936).    Plaintiff is permitted to exercise outdoors for one hour, five days weekly.    (*Id.*).    Plaintiff is also permitted to possess a variety of personal and religious items as detailed by MDOC Policy.    *See* Mich. Dep't of Corr., Policy Directive 04.05.120 (eff. June 1, 2019).

While the Court does not doubt that Plaintiff's experience in segregation is unenjoyable, such is justified given Plaintiff's long history of violent and noncompliant behavior.    As is well understood, "[a]lleging that prison conditions 'are restrictive and even harsh' does not suffice because such conditions 'are part of the penalty that criminal

-17-

offenders pay for their offenses against society.'"  *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (citation omitted).   Accordingly, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."   *Ibid.* (citation omitted).   While unpleasant, Plaintiff's experience in segregation hardly violates this standard.   The undersigned recommends, therefore, that Defendants are entitled to summary judgment as to these claims.

### 3.    Utilization of Restraints

Plaintiff alleges that he is subject to a "special restraint restriction," which requires him to be "placed in handcuffs and leg irons with a drop chain attached to them and secured with a padlock for all out of cell movement."   Plaintiff argues that being restrained in this manner violates his Eighth Amendment rights.

Plaintiff is placed in "High Security Restraints" prior to any out-of-cell movement. (ECF No. 100-9,   PageID.938).   Because of Plaintiff's history of murder, violence, and non-compliance, as well as his repeated threats to commit further violence, prison officials consider use of these restraints "to be the only safe way to be able to transport [Plaintiff] out of his cell."   (*Id.*).   This is a reasonable and prudent conclusion.

The Court fails to discern how restraining Plaintiff in this manner violates his Eighth Amendment rights.   Plaintiff has demonstrated that the only way to ensure the safety of prison officials and other inmates is to significantly restrain his ability to move before allowing him to exit his cell.   Again, while the Court does not doubt that these

restraints are uncomfortable, such hardly deprive Plaintiff of the "minimal civilized measure of life's necessities."   Rather, they are a reasonable and measured response to Plaintiff's demonstrated willingness to murder and assault prisoners and prison staff. Furthermore, while Plaintiff alleges that use of these restraints has caused him to suffer permanent injury, he has submitted no evidence of such.   Such unsubstantiated speculation is insufficient to defeat a properly supported motion for summary judgment. Thus, to the extent Plaintiff's allegations are interpreted as asserting a claim for use of excessive force, such likewise fails.   The undersigned, therefore, recommends that Defendants are entitled to summary judgment as to these claims.

4.      Housing Placement

Plaintiff alleges that his placement in "the most restricted, loudest and rambunctious unit" violates his Eighth Amendment rights.   Again, the Court does not doubt that the housing unit in which Plaintiff is housed is loud and rambunctious.   It is likely occupied by other prisoners who, like Plaintiff, are unwilling and/or incapable of complying with basic rules and living peacefully with others.   Plaintiff has failed, however, to present any evidence that the conditions in his housing unit deny him the "minimal civilized measure of life's necessities."   Plaintiff's conclusory allegations and subjective dissatisfaction are insufficient to defeat Defendants' properly supported motion for summary judgment.   Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to these claims.

5.    Yard Restriction

Plaintiff alleges that he is strip-searched whenever he enters and exits the exercise yard.    Plaintiff argues that this violates his Eighth Amendment rights.    It is important to note that Plaintiff is not alleging that these strip searches are conducted in a manner that violates his Constitutional rights.    Instead, Plaintiff asserts that the very fact that he is subjected to these searches violates the Eighth Amendment.

Plaintiff has a demonstrated history of locating and/or fashioning weapons which he then hides on his person or within his cell.    Plaintiff also has a history of using such weapons to commit murder and violence.    Plaintiff likewise continues to threaten prison officials with extreme violence and murder if ever given the opportunity.    In light of these facts, it would be irresponsible of prison officials to not exercise every caution whenever Plaintiff is outside of his cell.    Under the circumstances, subjecting Plaintiff to the searches in question does not violate the Eighth Amendment.    *See, e.g., Sumpter v. Wayne County*, 868 F.3d 473, 481-85 (6th Cir. 2017) (strip searches constitutional when conducted for legitimate penological reasons).    The undersigned recommends, therefore, that Defendants' motion for summary judgment be granted as to these claims.

6.    Participation in Start Unit Program

The MDOC has implemented "Start Units" as an "alternative to segregation." (ECF No. 100-9, PageID.941-56).    The stated purpose of this program is "to provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the

-20-

prisoner's positive adjustment, with the goal of reintegration into traditional general population." (ECF No. 100-9, PageID.943). Plaintiff alleges that his requests to participate in the Start Unit Program have been denied in violation of his Eighth Amendment rights.

Plaintiff's requests to participate in the Start Unit Program have been denied because Plaintiff "has never met the criteria for Start," in part, because of his "history of violence and threatening behavior." (*Id.*, PageID.938). Moreover, prison officials have determined that placing Plaintiff in "the reduced security and custody level of a Start Unit would place staff and other prisoners in serious jeopardy from a violent assault by [Plaintiff]." (*Id.*, PageID.939).

Plaintiff is receiving regular medical and mental health treatment. (ECF No. 100-13-16, PageID.982-1025). Plaintiff's continued placement in segregation is also reviewed monthly. (ECF No. 100-9, 100-17, PageID.937-38, 1027-88). Plaintiff has presented no evidence that the care he is receiving is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737. Rather, Plaintiff's dissatisfaction amounts to nothing more than a disagreement regarding the type of medical and/or mental health treatment he is receiving which, as noted above, does not violate the Eighth Amendment. *See, e.g., Snider v. Saad*, 2020 WL 6737432 at *9-10 (W.D. Mich., Nov. 17, 2020) (prisoner's dissatisfaction over the denial of his requests to participate in the MDOC's Start Unit Program does not implicate the Eighth Amendment because such represents

nothing more than "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment"). Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to these claims.

B.    Fourteenth Amendment

Plaintiff argues that (1) his continued placement in segregation and (2) the denial of his requests to participate in the Start Unit Program violates his Fourteenth Amendment right to due process.

1.    Administrative Segregation

Courts recognize that continued long-term placement in administrative segregation can impose an atypical and significant hardship sufficient to implicate the Constitutional right to due process. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (citations omitted). To satisfy due process, therefore, "prison officials must engage in some sort of periodic review while an inmate is confined in administrative segregation" and "the officials' decision to continue such confinement must be supported by 'some evidence.'" *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013).

The evidence reveals that Plaintiff's continued placement in segregation is reviewed monthly. (ECF No. 100-17, PageID.1027-88). The expectations prison officials have for Plaintiff to obtain re-classification are not unreasonable: "abide by the unit rules and regulations, maintain proper hygiene and housekeeping, and positively interact with staff and prisoners." (*Id.*). Plaintiff is likewise to "remain misconduct

-22-

free."  (*Id*.).   The evidence reveals, however, that Plaintiff has been unable to satisfy even these minimal requirements.  (ECF No. 100-7, 100-8, 100-17, PageID.859-932, 1027-88).   Plaintiff argues that his monthly classification reviews are a "sham," but has presented no evidence that such is the case.   The Court further wonders how Plaintiff can accurately assess these reviews given that he refuses to even participate in such. (*Id*., PageID.1027-88).   In sum, Plaintiff's segregation status is reviewed regularly and the decision to maintain Plaintiff in segregation is reasonable and based upon "some evidence."   Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to these claims.

2.    Participation in the Start Unit Program

Finally, Plaintiff argues that the refusal by prison officials to allow him to participate in the Start Unit Program violates his right to due process.   The constitutional right to due process is only implicated by prison conditions that impose an "atypical and significant hardship. . .in relation to the ordinary incidents of prison life." *Selby*, 734 F.3d at 559 (citation omitted).   As discussed above, however, the refusal by prison officials to allow Plaintiff to participate in the Start Unit Program constitutes, at most, a disagreement regarding the best course of treatment for Plaintiff.   It hardly constitutes an "atypical and significant hardship."   Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to these claims.

## IV.    State Law Claims

Having recommended the dismissal of Plaintiff's federal law claims, the undersigned further recommends that Plaintiff's state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).   As courts recognize, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).    In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).   Considering these factors, the balance weighs heavily against exercising supplemental jurisdiction.   Accordingly, the undersigned recommends that Plaintiff's remaining state law claims be dismissed without prejudice.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motions for Affirmative Relief (ECF No. 83 and 86) be denied; Defendants' Motions for Summary Judgment (ECF No. 97 and 99) be granted; and this matter terminated.

For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous.   *Coppedge v. United States*, 369 U.S. 438, 445 (1962).   Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

-24-

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 6, 2022                    /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge